**BOYDSTON v. CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK et al.**

(Circuit Court of Appeals, Eighth Circuit. March 27, 1924.)

No. 6473.

1. **Evidence ☞83(4)—Registered mortgage bearing county treasurer's indorsement held to justify presumption that official acts were legally performed.**
    Where partial payment was made on the mortgage tax required by Comp. St. Okl. 1921, § 9585, and the mortgage was admitted to registration and bore the county treasurer's indorsement, as required by section 9589, persons noticing the record *held* justified in relying on the presumption that the official duties of the treasurer and register of deeds had been legally performed and that the tax was paid.

**2. Evidence ⊂∞89—Presumption of regularity of official acts in recording mortgage held not overcome, though maximum tax was not paid.**

Where the deficiency in the collection of a mortgage tax admitted to registry and indorsed by the county treasurer was not obvious to an examiner of the record, the presumption of the regularity of the official acts was not overcome.

**3. Taxation ⊂∞533—Owner of registered mortgage may not be denied remedies for its enforcement because tax thereon not fully paid.**

Where owner of a registered mortgage had a right to rely on the full payment of the mortgage tax required by Comp. St. Okl. 1921, § 9585, remedies for its enforcement could not be denied under section 9592, on the ground that the tax had in fact not been fully paid.

**4. Bills and notes ⊂∞357—A pledgee of commercial paper to secure loan is holder for value.**

One who takes commercial paper to secure the repayment of a simultaneous loan made in consideration of the pledge acquires it for value.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the Continental & Commercial Trust & Savings Bank and another, as trustees, and another, against Tom D. Boydston, as trustee of Midco Gasoline Company, bankrupt, and others. Decree for plaintiffs, and defendants appeal. Affirmed.

George S. Ramsey, of Muskogee, Okl. (Edgar A. De Meules, of Tulsa, Okl., Malcom E. Rosser and Villard Martin, both of Muskogee, Okl., and Harry Fair, Owen Owen, C. L. Yancey, and H. L. Fist, all of Tulsa, Okl., on the brief), for appellants.

Henry Russell Platt, of Chicago, Ill. (C. B. Stuart and J. F. Sharp, both of Oklahoma City, Okl., and Carl Meyer and Charles L. Powell, both of Chicago, Ill., on the brief), for appellees.

Before SANBORN, Circuit Judge, and BOOTH and REEVES, District Judges.

REEVES, District Judge. From a decree of foreclosure under a mortgage or deed of trust, the trustee in bankruptcy, one of the defendants below, with others, has appealed. The only controversy here, as well as in the trial court, relates to the validity of the record of said mortgage or deed of trust and its effective force as constructive notice.

The Midco Gasoline Company was the mortgagor or maker of the deed of trust, or trust indenture, as it was called, but because of the interlocking business connections of that company with Midco Petroleum Company the latter was made a party defendant. Both were Oklahoma corporations. When this suit was instituted, both said corporations were in bankruptcy. The same trustee is now in charge, and both are joined in this appeal.

On January 17, 1921, Midco Gasoline Company executed its 24 eight per cent. negotiable note obligations, numbered consecutively from 1 to 24, aggregating $4,000,000, payable to bearer, and all bearing date November 1, 1920, and maturing as follows:

"Note No. 1 shall be for the principal sum of $320,000, and shall be due and payable on November 1, 1921, and notes numbers 2 to 24, both inclusive,

⊂∞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shall each be for the sum of $160,000, and shall be due and payable, respectively, at quarterly intervals after November 1, 1921, note No. 2 being due and payable on February 1, 1922, and note No. 24 being due and payable on August 1, 1927."

To secure said notes, it executed its mortgage or "trust indenture" as of the same date. The so-called "trust indenture" ran to appellees herein, plaintiffs below, as trustees, and covered:

"All and singular, its property real, personal and mixed, income, rights, privileges, easements, and franchises of every description now owned, used or enjoyed by it or which may hereafter be acquired, owned, used, or enjoyed by it, and wheresoever situated."

In accordance with the terms of the mortgage, said notes were delivered to the trustees for authentication and immediately thereafter, under instructions, the trustees delivered them to the Midco Petroleum Company. Concurrently with the foregoing transactions the said Midco Petroleum Company executed its mortgage or trust indenture of similar tenor and effect, nominating the same trustees, securing a bond issue of like amount, to wit, $4,000,000, and covering all of its property, including the above-described note obligations of the Midco Gasoline Company. In compliance with the terms of the latter mortgage, the notes of Midco Gasoline Company were delivered to the trustees to be held by them as collateral to the bonds issued by the Midco Petroleum Company. These several transactions were consummated in January and February of 1921, and it was shown that a considerable portion of the Midco Petroleum Company's bonds were sold.

On October 24, 1921, petitions in involuntary bankruptcy were filed against both corporations, and on February 18, 1922, they were adjudged bankrupts. The same trustee was elected in the two proceedings, and after the election and retirement of certain intermediate trustees, Tom D. Boydston, defendant below, appellant here, was elected trustee for both. Alleging default in payment of the principal and interest, due November 21, 1921, the trustees on or about November 3, 1921, instituted proceedings to foreclose under the mortgage or trust indenture of the Midco Gasoline Company.

The trustee in bankruptcy has resisted said proceeding upon the grounds, as he alleges, first, that said mortgage as recorded is ineffective as constructive notice, because the registration tax, prescribed by the laws of Oklahoma, was not paid as a condition precedent to the recordation of said mortgage; second, that, even if properly of record, its provisions are not enforceable under the law and that it stands as an "imperfect obligation," because all the tax was not paid; third, that there was no consideration for said notes, and that for want of such consideration it became a fictitious increase of indebtedness, and was therefore void under section 39, article 9, of the Oklahoma Constitution.

Other pertinent facts will be stated in the course of the opinion.

### Opinion.

1. The mortgage registration tax law of Oklahoma imposes a tax upon mortgages of real property in lieu of other taxes, and, by statute, deems a mortgage to be on real property, when both real and personal

property are covered. Section 9585, Comp. St. Okl. 1921. The exaction for revenue, however, is only designed to affect property located within the state of Oklahoma, and if the mortgage covers property—

"located partly within the state and partly without the state, it shall be the duty of the county treasurer to whom said mortgage is offered for taxation to determine what proportion shall be taxable under this article by determining the relative value of the mortgaged property within this state as compared to the total value of the entire mortgaged property." Section 9594, Comp. St. Okl. 1921.

And it is further provided:

"That where a mortgage, or deed of trust, is executed to secure the payment of bonds issued by any * * * industrial corporation and the money derived from the sale of said bonds * * * is to be used for the creation, construction, building, improving and erecting of property that will be subject to an ad valorem tax in the county where same is situated; and there shall be paid a recording fee on said mortgage, or deed of trust, * * * and on payment of same" (recording fee) said property "shall not be subject to the penalties prescribed in this act." Section 9593, Comp. St. Okl. 1921.

For the effective enforcement of the above provisions, it is provided by section 9589, Comp. St. Okl. 1921, as follows:

"Before any such mortgages shall be entitled to record * * * the owner of said mortgage, * * * shall present such mortgage to the county treasurer of the county, or of any county in which said land or any part thereof described in said mortgage is situated, and shall pay to said county treasurer the recording tax herein provided for, and said mortgage shall be indorsed by said county treasurer with the amount paid thereon, * * * and upon presentation of said mortgage so indorsed to the register of deeds of any county in this state where said land or any part thereof is situated, said mortgage shall be filed for record and recorded, together with the indorsement of the county treasurer thereon showing the payment of such tax."

Section 9592, Comp. St. Okl. 1921, provides that:

"No mortgage of real property shall be recorded by any register of deeds unless there shall be paid the tax imposed by and as in this article provided."

And the "enforcement of any mortgage which is subject to the taxes imposed by this article" is denied to the holder, until the payment of said tax.

[1] The mortgage in question was admitted to and spread upon the records of Tulsa county, Okl., and other counties where property included therein was located. It appears, moreover, that the property specifically described in the mortgage was all located in the state of Oklahoma. It was shown by the evidence that upon the two mortgages of Midco Gasoline Company and Midco Petroleum Company a total sum of $4,000 had been paid to the proper authority as a tax, and that $1,000 of such payment had been allocated by the treasurer to the mortgage in controversy and that said mortgage bore the following indorsement:

**"Treasurer's Indorsement.**

"I hereby certify that I received $1,000 and issued receipt No. 16107 therefor in payment of mortgage tax on the within mortgage.

"Dated this 17th day of January, 1921.

"W. W. Stuckey, County Treasurer,         Tulsa Co., Okla.,

"By N. Sherwood."

For a decision of this case, it is not necessary to determine whether a mortgage subject to the tax would be constructive notice, if recorded without the payment of said tax. In the instant case, a partial payment at least was made on account of said tax, and the mortgage was admitted to registration, bearing an indorsement, as required by law, affirming the "payment of mortgage tax on the within mortgage."

This was a declaration by a proper official, as required by law, to the world that the tax had been paid, and all persons noticing the record of said instrument were justified in relying upon the presumption that the official acts or duties of the treasurer had been legally performed. Ross v. Stewart, 227 U. S. 530, loc. cit. 535, 33 Sup. Ct. 345, 57 L. Ed. 626; 22 C. J. 130. The same presumption would obtain with respect to the official acts of the register of deeds in admitting the mortgage to record in the several counties where recorded.

[2] It is argued, however, that the record of said mortgage makes a prima facie showing of an inadequate and insufficient payment of tax, and therefore affirmatively disproves or rebuts all presumptions of regularity. We cannot so hold.

Excerpts from the mortgage registration tax laws of Oklahoma show that "the county treasurer to whom said mortgage is offered for taxation" shall determine "what proportion shall be taxable under this article," etc., in reference to property "located partly within the state and partly without the state"; and whereas, the property specifically described in the mortgage was located in the state of Oklahoma, yet it was provided therein that subsequently acquired property, wheresoever situated, should be included, and stand as security for the obligations therein described. Again, the law relieves a mortgage from the registration tax, when given to secure bonds of an industrial corporation, if the money arising from the sale of said bonds "is to be used for the creation, construction, building, improving and erecting of property that will be subject to an ad valorem tax in the county where the same is situated." Under such circumstances, purchasers and holders of said notes or bonds would have the right to conclude that whatever apparent discrepancy might exist between the tax actually paid and the amount prima facie collectible could be reconciled upon the theory that the treasurer had properly exercised the power lodged in him.

Moreover, the treasurer was obliged to levy and collect said tax under section 9588, Comp. St. Okl. 1921. The maximum tax fixed by this statute is "ten cents (10c.) for each one hundred ($100.00) dollars and each remaining major fraction thereof where such mortgage is for five (5) years or more." On the same basis, for each year below five years, there is a reduction of two cents, so that, in case the mortgage is for two years or less, the tax is two cents for each one hundred dollars or major fraction thereof.

As heretofore stated, the notes secured by the mortgage in the instant case matured, $320,000 at the end of the first year and an aggregate of $960,000 on or before the end of two years. The tax was to be determined and measured by the debt and its duration, and the latter factor may have been reasonably considered as having entered into the computation. The deficiency in the collection, if any, was not, therefore,

obvious to an examiner of the record, and the presumption of regularity was not overcome or rebutted from aught appearing upon the face of the record, or that may have been discovered within the record.

[3] 2. It follows from the foregoing that, if the owner and holder of said obligations had a right to rely upon the full payment of said mortgage tax, remedies for its enforcement could not be denied him, even though said tax had not been in fact fully paid.. So far as he is concerned, it was not an imperfect obligation.

[4] 3. There was no want of consideration in the issuance of the notes or bonds secured by said mortgage. It was in evidence that the Midco Gasoline Company was greatly indebted to Midco Petroleum Company. Its notes or bonds were issued and delivered to the Midco Petroleum Company, and by it pledged to the appellants herein as collateral security to certain bond obligations of said company. The latter company's bonds had been actually issued and sold in reliance upon such security. The rule is that:

"One who takes commercial paper by way of a pledge to secure the repayment of a simultaneous loan made in consideration of the pledge acquires it for value." Greenway v. Orthwein, 85 Fed. 536, 29 C. C. A. 330; Oates v. Bank, 100 U. S. 239, 25 L. Ed. 580; R. R. v. Bank, 102 U. S. 14, loc. cit. 28, 26 L. Ed. 61.

The decree of the chancellor below was correct and should be affirmed. It is so ordered.